The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. When Blue. May it please the Court. I'm Damian Blue. I represent the appellant, Mr. Joseph Simms. When Congress amended Section 924C in 1986, it adopted the 28-word residual clause from Section 16B, which had been passed just a few years earlier. Since that time, the Supreme Court has told us in Leocal and Amaya that those 28 words require a categorical approach. And until Congress amends the statute, as it has done before, or the Supreme Court changes its analysis, this Court is bound by precedent to apply the categorical approach to 924C and to hold that the residual clause is unconstitutionally vague. And for that reason, we're asking the Court to vacate Mr. Simms' 924C conviction and to remand this case for resentment. But in no case has the Supreme Court ruled that the residual definition of a violent crime, like we have here in this statute, is a predicate offense for a crime for a pending prosecution. The Supreme Court has not ruled that, Your Honor. The Supreme Court cases in Leocal and Amaya do deal with recidivist conduct. But Section 16B applies not only to cases dealing with recidivist conduct, but also to cases concerning contemporaneous conduct. The Supreme Court's language in Leocal also dealt with the ordinary case, which is the language that the Supreme Court focused on in Amaya and Johnson. But the Supreme Court was also fairly specific that it did not have a problem with the substantial risk standard when applied in a real-world context, which would seem to be the jury trial determination that the government puts forward for 924C 3D in this case. But there has to be a textual basis for submitting the crime of violence determination to a jury. And in 924C, there is no such textual basis for that. Looking at the text itself, Congress uses a series of words and cues that indicate that it always… When you look at the force clause, you're struck immediately by the words as an element. But the residual clause is actually drafted quite differently and uses words by its nature, involves. So it's much less clear that that's to be determined purely as a matter of law and as a matter of categorical approach and as a matter of the ordinary case. I mean, we do have to take account of the fact that A and B in this crime of violent definitions are really very different, very differently worded. But, Your Honor, the Supreme Court has told us what the words that Congress has used by its nature in the words offense. And the court has said that those words used in conjunction means the inherent or intrinsic qualities of an offense. And that means or that approach or that language demands the categorical approach. If the categorical approach were applied, but the vagueness problem disappears and goes away if a case-specific approach is applied. I mean, it makes that clear. It does not indicate, in my judgment, that you continue to have a vagueness problem if the case-specific approach is applied to capital B. But what DeMaia also makes clear, Your Honor, is that the categorical approach is the only plausible interpretation of the language in the 924C residual clause. And so the principles of constitutional avoidance that Your Honor alludes to would not come into play here because, again, the categorical approach is the only plausible interpretation. And based on that. Well, I thought Johnson belies just what you asserted. In Johnson, the court said the categorical approach focuses on previous convictions, not commissions. This is what they said. The emphasis on convictions indicated that Congress intended this sentencing court to look only to the fact that the defendant had been convicted of a crime falling within certain categories. And, of course, 924C does not focus on convictions, past convictions, but talks about contemporaneous conduct, which is being charged and has to be proved. But neither DeMaia nor Leocal turned on any unique features of the Immigration and Nationality Act or the aggravated felony definition as it relates to prior conduct. Again, 15B is used in statutes dealing with contemporaneous conduct. But the INA and ACCA all focused on prior convictions and trying to identify whether a prior conviction satisfies as a predicate offense. Whereas 924C does not focus on prior convictions. It is actually alleging a current offense, which has to be proved and can be tested on a motion to dismiss or Rule 29 motion during trial. It doesn't amount to it, but it is case-specific, which can be analyzed differently than the problems that arose when you're looking at a past conviction. I think that was made clear in Johnson and repeated completely and fully in DeMaia. Well, I'll return to the context in which 16B is used, Your Honor. It's used, again, I cite, to contemporaneous conduct. This Court considered 16B's application to the Travel Act in 1993 in United States v. Aragon. There, the Court applied the categorical approach in interpreting 16B in that context. Also, just last year in United States v. Diaz, this Court applied the categorical approach to 16B in the context of the Mandatory Victims Restitution Act, again, which looks at contemporaneous conduct. In both of those cases, the conduct or the facts of the case were before the Court, and the Court chose to apply a categorical approach. I would also note that in Aragon, Your Honor, the defendant in that case asked the Court to do exactly what Your Honor proposes, which is to submit that issue to the jury. And the Court said, no, these are determinations of law, again, concerning contemporaneous conduct. In all those cases, the panel is bound by prior precedent in the circuit. We're en banc now, so that's not applicable. So I think the question comes down to how do you reconcile the fact of the analysis in all these prior Supreme Court cases, dealing only with prior convictions, with the statements very specifically made, though they're probably dipped up in Johnson and DiMaio, that the Supreme Court did not doubt the constitutionality of laws that call for the application of a qualitative standard such as substantial risk, which is exactly what we have in this case, to real-world conduct, because the problem was with application of that standard to the idealized, ordinary case of the crime. So I think you have to tell us how you reconcile those statements from the Supreme Court with the fact that you only have prior conviction cases that have dealt with the categorical approach. I would turn back to Leocal, Your Honor. Again, in Leocal, the Court, looking just at the text of 16b itself, without any reference to the statutes or the context in which the crime of violence definition was embedded, looking only at the text itself in Leocal, without reference to any other Supreme Court decision, says that we know that the words, by its nature, used in conjunction with the word offense, requires the categorical approach. Leocal was also an ordinary case approach for a prior conviction. It was, Your Honor. And my point in citing the prior decisions of this circuit with respect to 16b simply is to show that 16b is used in all manner of applications. It's used to describe a crime of violence for recidivist conduct, as well as a crime of violence for contemporaneous conduct. Do you think that the problems that gave rise to resort to the utilization of the categorical approach exist here? For example, do you have the problem of vagueness with respect to pending conduct that you do when you're trying to assess a conviction that's predetermined and a given? Do you have any concern about the fact that the problems that gave rise to the application of the categorical approach in those cases that you have cited to us can be analyzed very differently here because the problems that generated them don't seem to exist? Your Honor, I would contend that, well, first, turning back to Taylor, which is sort of the origin of the court's pronouncement of the categorical approach, the Supreme Court looked at the text of the statute itself, the legislative history of the Armed Career Criminal Act, and also to the practical considerations and potential unfairness to defendants. And I believe all three of those hallmarks exist as applied to 924C. First, I've discussed the text, but with respect to the congressional intent, we know from the Taylor decision that one of the early versions of the— to adopt the categorical approach simply don't exist here. That was her point, that the problems that gave rise to the categorical approach simply are not present when you're talking about trying to extend the categorical approach to a pending prosecution or to a present case as opposed to looking at a prior, long-past state conviction. Well, I would agree that those problems don't exist the same way that they did in Taylor, but there are significant still problems that would arise from submitting these issues to a jury. They're different problems than the Taylor problems, but they're no less significant. We bring forth— One problem—excuse me, Judge Dunford. No, I was just going to ask if you could help me with that because that's where my question was going. I appreciate it. I understand. Thank you. I think one of the problems that we highlighted is that the crime of violence determination is entirely separate from the youth carrier possession component of 924C1. And if both of them are submitted to the jury, again, in the words of Taylor, for concern about potential unfairness to defendants, juries can easily conflate the firearm possession aspect with whether the crime of violence is— They're submitting the elements to the jury, which is what we do with any— Whether you conflate them or not, the important thing is to submit, under proper instructions, the elements of the crime to the jury, and you can submit the crime of violence to the jury, along with the definition in the residual clause. And you can also submit to the jury the question of whether firearms were used during the commission of the crime of violence. So what you're doing is the way you would do with any other crime, which is to simply submit the elements of the crime to the jury and have the jury apply under proper instruction the elements of the crime to the particular facts of the case. I just don't see the problem. The problem with that approach, Your Honor, is that because the crime of violence determination is entirely separate, the jury would not be able to consider the use, carry, or possession of a firearm in determining whether a crime of violence has actually occurred. And so the jury essentially is engaging in analyzing facts that are not before it. It cannot consider, as a matter of law, the firearm. Well, Mr. Blue, under the statute, the jury is required to find that it's during and in relation to any crime of violence, right? That's correct, Your Honor. But the crime of violence determination is entirely separate. What I'm trying to get at is assume for a minute that the categorical approach doesn't exist, okay? What's wrong with this statute? And I'm just wondering if we aren't trying to put the overlay of the categorical approach automatically onto a statute without first trying to figure out whether there's a problem with the statute. What's wrong with it? What is constitutionally infirm about the statute, leaving aside the existence of the categorical approach? I don't know that I can answer that question without addressing the categorical approach. That's what I'm worried about. Didn't the Supreme Court tell us, looking at exactly this language, that we had to use the categorical approach? I mean, they told us several times, right? Yes, in the context of 16b, that's correct, Your Honor. But it's exactly the same language. It is, that's correct. But it was applied to address a problem that we all seem to be struggling with, or at least there seems to be some concern that simply doesn't exist here. It was created to address that. That was why I was finding your response to Judge Keenan's question extremely helpful. See, you have to assume the existence of the categorical approach as the given to make the categorical approach fit the statute, rather than looking at the statute and seeing it, analyzing it, implicates the categorical approach at all. Did that make any sense at all? It did, Your Honor, and I see my time has expired. May I respond to that last comment? Thank you. And so our only point would be, Your Honor, that the court has said that the categorical approach is the only plausible interpretation of the 16b language, and the Supreme Court has not offered any alternative interpretation. Thank you. Thank you, counsel. Mr. Coburn? May it please the Court. I'd like to just jump right in on Judge Duncan's question about the reasons that you would apply a categorical approach to this language and the problems that arise if you don't. And the reason you apply a categorical approach here is to keep 924C limited to a discrete set of crimes. If you adopt the government's view that a purely fact-based approach can apply, all of a sudden you expand 924C liability into a broad range of crimes that have traditionally been considered nonviolent. And let me give you an example of that, Judge Duncan. Take an illegal immigration, an illegal reentry offense. No one has ever considered that to be a violent crime that would support 924C liability. But imagine that someone crosses the border and for protection carries a firearm. Maybe they brandish it to fend off somebody from the cartel who is on that same path that they're on. All of a sudden, the government can charge the jury and say, look, their conduct in crossing the border with this firearm creates a substantial risk that force will be used. All of a sudden, we've converted an illegal reentry offense into one that can potentially support 924C liability under a pure fact-based approach. That runs directly contrary to Congress's point. Does your example require brandishment? No, I think the government could argue that just by possessing the firearm, the person has created a substantial risk that force will be used if they are confronted, either by a cartel member or if they're confronted by law enforcement. That's the exact same theory that the government uses in burglary cases that they prosecute under the residual clause, to say even if you encounter no one in the midst of the burglary, the mere fact that you were there, you were doing something you weren't supposed to be doing, in the government's view, would be a risk. That's a law presumption with respect to burglary and danger that I don't think exists with illegal entry. Well, but the problem, Judge Agee, is that that becomes a jury determination. And the government, there's no, if you adopt this pure fact-based approach, look at nothing other than what the defendant actually did, you broaden the potential for liability here and it becomes a jury question. Then none of these common law or legal problems... Mr. Carpenter, it sounds like to me you just don't like the statute that was written. Because all I think the government is arguing is that the case should be submitted to the jury under the terms of the statute that was written. Now, you may think the statute is too broadly worded, but that's something to take up with Congress. We don't have the authority to amend it. No, Your Honor, if you adopt the government's approach here, you are amending the statute. Because the Supreme Court has told us that law, and this is Judge Mott's point, the language that Congress used... The Supreme Court has told us that there's a vagueness problem with respect to the residual clause under the categorical approach. But the court has also strongly suggested that that same vagueness problem, given the fact that the language is the same, but that same constitutional, the fatal constitutional flaw of vagueness does not exist when you take a case-specific approach because juries assess questions of clear and present danger or imminent danger or substantial risk all the time. That's just the daily fare of finders of fact. Your Honor, I agree with all of that. And if Congress goes back and amends the statute and adopts the fact-based approach, then the constitutional arguments fall away, and they can do it very easily. The problem that I'm having, at least in your attempt to respond to my question, is that I think it expands it beyond the range of utility. We submit the elements of the crime to the jury. We would be doing nothing more, nothing less. So I'm not quite sure, and I'm probably just confused, which is often the case, but I don't quite see the parade of horribles you envision flowing from that Could you sort of narrow that in for me? Well, I'll do my best. I think the problem is that under a pure fact-based approach, you're... You call it an elements-based approach, and it makes a little more sense to me because that's what the jury does in lining up its determination with respect to any statute, is it not? Yes, but what the jury does is it has to answer questions of fact. If it's a pure question of law, which we contend it is and which it always has been up until this point, the claimant... And they change it to make it a fact-based approach. If we change it and make it a fact-based approach, every case is going to be tried. Exactly. Every case is going to be tried, and nobody's going to know whether or how or under what conditions they can plead guilty. Exactly. The plea negotiations are going to be upended. Exactly. And hundreds of people that are in the penitentiary are going to be claiming relief. That's right. A fact-based approach we have... And this is, again... I thought they did now, actually. Well, I can speak to the 2255 point in a minute. It's a whole lot simpler under our approach than it is under a fact-based approach. But the point is that since Eragon, since the Ninth Circuit decision in Aramco, it was 1995, those two decisions both involved contemporaneous conduct circumstances just like this. In both those cases, the defendant made the exact same argument that the government makes here. Because we're dealing with contemporaneous conduct, you can just submit this question of facts to the jury. They can resolve it. This court in Eragon, the Ninth Circuit in Aramco, rejected the government's approach and said no. When you look at the text of this statute, it doesn't turn on the precise facts of what actually happened. It turns on the general nature of the crime. It applied a legal analysis. Congress has had the opportunity for 25 years to change that, and it hasn't. And Judge Agee, to your point about the fact that Eragon is a panel opinion that could be overruled, that's true, but what I would point the court to is the Supreme Court's decision in Leocal, which echoes the reasoning of Eragon. If you look at Eragon, the decision says the word is by its nature. That means in general. It's not modified by any fact-specific words like conduct or circumstances that are present in some other statutes. And because of that, we are applying a general approach. Leocal adopted that same reasoning. Can I ask you a quick question? I just want to go back to this question about what it would look like to submit this to the jury under the government's theory. I understand, I think I understand, tell me if I'm right, that your point is, look, the one thing we know about this statute is that there have to be some cases where you use a gun in relation to a crime that are not crimes of violence. Those are two separate elements. Clearly, sometimes you can use a gun in connection with a felony, a serious crime. It doesn't count as a crime of violence. So if you just send all the elements to the jury in a fact-based approach, the concern is the jury is going to read it differently and say, no, anytime you use a gun, of course there's a substantial risk of physical force. Why can't that be solved with jury instructions? That's my question. Why can't you just instruct the jury, pay no attention to the gun or don't rely solely on the gun? I'm not sure exactly what it would have to be. So I think there are two problems with that. One is an inherent prejudice problem. It's just hard to conceive that a jury could hear evidence about a gun being possessed or brandished and ignore that entirely. But we make that presumption all the time. We do make that presumption all the time about jury's ability to follow jury instructions that are, frankly, counterintuitive to logic. But we ask them to disregard what they just heard, and we presume that they are capable of doing that. I agree that that happens, but I think we shouldn't do it unless Congress tells us we have to. I think we can at least pay attention to the real-world consequences of that instruction. But there is a second problem with that scenario, and it's that it takes you away from a fact-based approach. The government theory is you look at the fact of what happened, and that's why the vagueness goes away. But if you're asking the jury to blind itself to half of the facts, anything that happened in relation to the gun, you're no longer applying a fact-based approach. You get back into a hypothetical world of, well, what happened here absent consideration of the gun, and you have to consider that. That is nearing the vagueness. Well, the hypothetical world is trying to find and discern the ordinary case, which everyone recognizes is, you know, even advocates of a categorical approach recognize it as a problem. But I want to just point to a broader question, and that is what you're asking us in the totality to do, you're asking us to strike a direct conflict with the recent Second Circuit opinion, which said in your submission, you said, well, the Second Circuit opinion was poorly reasoned, was just wrong. But in saying that, you acknowledged that we would be in a head-on conflict with the Second Circuit. Not only are you asking us to do that, you're asking us to ignore the rule of constitutional avoidance and to deal with the constitutional vagueness problem that can be avoided with the case-specific approach, as the Supreme Court in Des Moines indicated it could. You're asking us to ignore Congress's purpose, which was to punish crimes of violence under 924C. When you look at the pre-sentence report, which was never objected to, this person comes in. There's a video surveillance system. He's coming in through some small window. He's smacking a court employee with a gun. He's throwing a cash register at the employee, making off with $1,000. And, you know, I'd like to be part of a decision that my fellow citizens would recognize as reflective of common sense. And when you ask us to create a circuit conflict and overlook a rule of constitutional avoidance and overlook differences in draftsmanship between A and B, and in addition to reduce common sense, what you're presenting us with is a very tall order, Mr. Carpenter. Well, I respectfully disagree with most of that, Your Honor. Let me try to pick out a few particular points to respond to. First, you're not creating a conflict. There are four other circuits that have already struck this language as unconstitutionally vague. The Second Circuit created that conflict. The appellant counsel there has already received an extension to file a petition for rehearing en banc. I am hopeful that the Second Circuit will sort that out and bring itself back into line. But most of those circuit opinions that go your way, so to speak, they were already bound by circuit precedent. They were not en banc, were they? I agree with that, Your Honor. Mr. Carpenter, can I follow up on Judge Harris's question? Is there a role for the judge to sort out these outlier cases, which obviously as a matter of law would not be something that would be submitted to a jury, and is that perhaps sort of a safety valve that would limit the reach of the government's view in this case? It's not, Your Honor. It's not under their theory. Their theory is you have to go purely fact-based. So motions for judgment for acquittal have no role to play in this? They don't. I mean, I'm sure I would argue for it, and I'm sure I would lose. And the reason is on what basis? If the legal standard that Section B incorporates is to ask the question as a matter of fact, did the defendant's conduct present a substantial risk, who is the judge to disagree with the jury on that inherent fact-based question? The Supreme Court has said this question isn't vague because juries measure substantial risk all the time. It's a fact-based question at that point. It's up to the jury to decide. And I'm sure the government will get up here and say something like, our charging policies would preclude us from charging that. But the Supreme Court has said repeatedly you cannot rely on the benevolence of prosecutors. I have another question I want to ask before you sit, because I think it's fundamental to where we're going with this. We're focusing in terms of, well, what do we do with this case that's come from the Supreme Court where nobody's disagreeing that this language of 16B is exactly or pretty much the same as what we're dealing with here in the 924 statute? It is clear the Supreme Court says that's a categorical approach. What concerns me is this court seems to have a propensity for accepting a way of interpreting constitutional law from the Supreme Court if the result is desired. If we want a particular desire to be differently on this court, we're going to say, well, the Supreme Court says this is exactly what it is and go with that. But when you don't, you go behind it and say, well, this is a present one, this is that. You find little nuances to try to differentiate the language. And that's where the confusion comes. If this court would do its job and follow the Supreme Court's language here, don't worry about it, because if it's a circuit split, the Supreme Court can fix it. But we create problems for the trial courts and the other courts in this circuit when we now go and say, well, we're going to look underlined. I'm all well with that. But we need to do it in every case. So when the next case comes and I hear this same argument come up to say, well, this is identical to this and the Supreme Court said it, I want to do what's being done here. If we go that, that is, let's look at the little nuances and figure out a way to get around it. That's what seems like to me is happening here. Why not make it simple? This is not difficult at all. Simply say it's categorical, the world doesn't end, if the Supreme Court doesn't like it, it can change it. And the circuits, I totally agree, the second circuit created this split if it wanted to, but creating a split is not because you come second. This may happen to come first on the case. We could have come before them, then they would create the split. But splits happen. And on issues like this that's lying around, we don't need to confuse this issue any further. We can kill this issue today and end it so that we don't keep bringing up these kinds of problems over and over to our trial courts and engage in nuances of, well, where can we go to find differences of how this differs from what the Supreme Court says clearly we ought to do? Excuse me, but with due respect to my colleague who is clearly a lot brighter than I am, I do not find it to be simple. And I am, in fact, genuinely struggling to bring my limited ability to the task of understanding an issue that is fairly persistent. So perhaps I'm just speaking out of my own limitation. I'm just giving you my perspective, and I've already acknowledged that exists. Thank you. There are those who can struggle with this, but I want that struggle to exist in the next case, not just in Sims. When the next case comes around, I don't want this comfort level to exist that the Supreme Court told us to do it. Let's struggle with that one, too. Your Honor, I agree with that. And, Judge Duncan, to your point, I think there is a simple way to resolve this case. And that's to say, Supreme Court, in Lee et al., you said this text does not refer to the specific facts. And that's all that was related. And that's all there is. They didn't do anything, the Supreme Court unanimously, in less than a month. Yes, and that was Chief Justice Rehnquist, the unanimous opinion. Chief Justice Rehnquist. And it's different than Taylor, Judge Duncan. I completely respect that. I completely respect your very excellent argument and your assistance in helping me grapple with this. Thank you. If there are more questions, I'm happy to answer them. And I'm correct, Your Honor, that Lee et al. relied only on the statutory language. It didn't talk about any constitutional problems. Yes, that's right. But that language, the nature of the offense of conviction, rather than the particular facts of the case. That language requires us to look at the nature of the offense of conviction rather than the particular facts relating to the petitioner's file. Your Honor, that's exactly right. It's on page 381 of Lee et al. And it's different than Taylor because Taylor has all of this analysis, but maybe the language is a little unclear. There's these practical considerations. Lee et al. says, just look at this statutory language. It mandates that we look at the general nature of the offense under a categorical type of approach, not at the facts. When you look at what the Supreme Court's doing, it is a strong strain of Supreme Court opinions, beginning with Apprendi, which says we want to have juries in on these questions. We want juries to be making these kinds of determinations. That's what Apprendi says. The Gall decision says we want to return sentencing more to the discretion of district courts. They want it to be more factual. They want it to be more district court oriented. This is a chance to vindicate what the Supreme Court has said in Apprendi and Gall for some time. But looking at this language, identical language, the Supreme Court unanimously said it requires a categorical approach. Exactly. So I would point Judge Duncan back to what you said in footnotes 7 in McCollum, which is we might wish that this categorical approach would go away. I would. This court's role, as Judge Wayne indicated, is to follow, not to lead. And so I would ask Judge Wilkinson to write a concurrence and give all the reasons why you think the categorical approach should be thrown out in this context. Counsel. Over here. Sorry, I'm on the far side. And may I ask a question? I know we're out of time, Chief. Certainly, Judge Wilkinson. Thank you. But isn't Leocal fundamentally different for two specific reasons? One, this was not a question that was presented to Leocal. Nowhere in the brief did anybody ever argue that anything other than the well-accepted ordinary case approach from James and its line of cases was going to be applied. And second, Leocal was addressing, to the extent it was addressing it at all, given that it wasn't raised, was trying to determine what the best read of the statute was. Correct? Yes. And here, we're asking a different question. Because of the rule of constitutional avoidance, our question, as your colleague mentioned earlier, is not what's the best read of the statute. The question is, is it a fairly plausible reading of the statute? Because under Sebelius and the long line of cases, we're required to adopt any reading of a statute that doesn't do violence to it so long as it's fairly plausible to avoid finding it unconstitutional. So Leocal, to the extent it addressed the question at all, given that the argument wasn't presented one way or the other, was simply addressing the question of what's the best read, which is very different from our question, which is, is it a fairly plausible reading? Why is that not a reason Leocal doesn't actually apply? Yeah, let me answer both of those questions. So first, the fact that it was poorly briefed or not briefed at all. That's a ground for the Supreme Court to revisit Leocal when it goes back up to the Supreme Court. That's not a ground for this court to say, well, Supreme Court, we think you didn't adequately consider the statutory text when you said this. This court follows what the Supreme Court said. If the Supreme Court decides it needs more briefing and to reconsider. But a different statute. Didn't say it was this statute. Same exact text, though. Not exact. I don't want to get sidetracked on that. The 28 words are the same. Every other offense is different. I think there actually is a difference in subsection B. Well, it's one that no one's contended is material, is my point. But the second point is that the alternative reading simply isn't plausible here. Also, in addition, Leocal didn't just say, this is the reading. They said, this language, which I think is materially indistinguishable, requires us to look at the elements and the nature of the offense of conviction rather than the particular facts relating to petitioner's crime. Now, I guess we could psychoanalyze the Supreme Court. It was an unanimous opinion. It took less than a month to decide. It was the Chief Justice who was particularly no particular friend of a defendant challenging a statute. Yes. I agree with that. And to highlight the point, Patricia, about why this alternative reading isn't plausible, think about what this requires us to believe about Congress's intent. It requires us to believe that in 1986, when Congress took this language from Section 16B, inserted it into 924C, it intended for an entirely different meaning and an entirely different application to apply. And it chose not to say anything about that in the text or in the legislative history. You'd think if they were intending these same 28 words to be analyzed differently, there would have been some hint of it, either in the text or in the legislative history. How do you square that with the way the Supreme Court has actually handled that text in a different context? In other words, Leachow was addressing that language when applied to a prior conviction. To describe the prior conviction and solve the problem, you're not going to retry that case. It's already been tried. And so you look at the nature of the case, and that created the vagueness. Whereas both Johnson and DeMaio, which came after Leachow, have recognized that in current circumstances, when you have a case specific which has not been gone to conviction, we're not looking at a past conviction. We're alleging a present risk. The court said there's no constitutional problem with that. And leading to that observation was the government's suggestion that Leachow language would apply generally to all these cases. They listed numerous statutes that would be involved, including 924C. And the Supreme Court said there's no problem with those cases. Now, I don't know if we're asked to follow the Supreme Court. The Supreme Court said pretty clearly context matters. When you're applying that language to describe a prior conviction, it has problems. When you're using that language in context of a case specific case that has yet to be tried, there's no problem. That court said no problem. And I don't know how you take account of that with your argument, which is sort of mechanical. It says the same words mean the same thing in every context. It doesn't make sense. And the Supreme Court has clearly said that's not so. Well, Your Honor, I agree with the general principle that context matters. But nothing about the context here is different enough to read. There's no past conviction. The categorical approach in these other cases, Leocal, have attempted to describe the nature of a prior conviction. We don't have a prior conviction here to analyze. We have current charged conduct. We are using a gun in connection with a crime of violence. And they have been charged and has to be proved to a jury under adequate instructions. That's a lot different than going backwards and looking a five-year-old state conviction and trying to determine whether it's a crime of violence because you can't go into the facts there. For a lot of reasons, as pointed out in Taylor. So what we do is we apply a categorical approach, which creates the ordinary case problem, which creates the vagueness. That's all recognized and laid out clearly in both Johnson and Tamiya. And I don't understand if we're going to follow a Supreme Court precedent, why don't we recognize what the court said about that? Well, I think you have to recognize what the text says here. And the text is the same text in 924C that was in 16B. And so I point you to the epilinguistic. I understand the court recognized that, too. In other words, that doesn't answer a thing. You're just arguing against what the court said in Tamiya and Johnson. No, I'm arguing exactly for what the court said in Tamiya, which is the word by its nature preclude a fact-based approach and require a generic one. And in doing that, it adopted the linguistic, the textual analysis that this court had set out to carry on. But, Mr. Kaufman, the Supreme Court was addressing the language in the context of a vagueness challenge or a residual clause. It was not addressing the very different question of the language in a case-specific approach where the vagueness challenge goes away. It was addressing that language in the context of a vagueness challenge to a particular set of words. But if there's no – if a case-specific approach resolves the vagueness challenge, then that leaves open the question because it becomes a very different issue from what it was that the Supreme Court previously took up. You know, the point here is that you, this court, is stuck with the text that we have. And Congress could change this so easily. It's four words. Instead of asking, did the offense by its nature involve substantial risk, Congress could easily amend this statute to say there's independent conduct in this particular case that force may be used. And actually, the may be used language, Judge Duncan, I think is important. It's not really been highlighted in the briefing. The verb phrase may be used is inconsistent with a historical descriptive approach. It is talking about future hypothetical conduct. Let me give you an example of what I mean by that. I'm sorry. I did not – I just wanted to make sure I understood what you were saying. I didn't mean to interrupt Judge Wilkinson's question. Sorry. It was just a point of clarification. I didn't? No. I don't think so. But if I may finish the point about may be used, it's very natural in English language to say, will the defendant's conduct next week create a risk that physical force may be used? Okay. It's very unnatural to use that same verb phrase referring to past conduct. Instead, what we would say is, did the defendant's conduct last week create a risk that force would be used? That's a different verb phrase. It would be extremely unnatural to say may be used referring back to past conduct. So that verb phrase is yet another indicator in the text that Congress intended a hypothetical or predictive analysis rather than a historical or fact-based one. Thank you. If there are no further questions, let's thank the Court very much for its time. Thank you, Counsel. Mr. Rubin. Good morning. May it please the Court. My name is Philip Rubin, and I represent the United States. And with me at Counsel's Table are Jennifer May Parker, Appellate Chief in the Eastern District of North Carolina, and John Taddy, an attorney in the Department's Criminal Division. Judge Niemeyer, you said it very succinctly, context matters. And that is what this case is about. And we've known and we've seen, even in the area of the categorical approach, that context matters and even the same words can mean different things when they're presented in a different context. Is that your response to the observation? Before you get to context, do you not stop and see whether the language is ambiguous? How do you make the leap from the language to context is my question. I think we use context to interpret text. And so I think you have to look at those two things together. I will acknowledge – Even if the text itself is not problematic. I think text can be so clear – I'm sorry, Judge, I didn't mean to interrupt. No, please, go ahead. I think text can be so clear that it provides essentially its own context. But this text is not that clear. And I think, as has already been pointed out, you have a very clear reference to the categorical approach in 924C3A. Has is an element. And we know Congress knows how to invoke the categorical approach. They could have done that for the risk of forceful. I just want to be sure I understand the government's argument. Your argument rests on us eschewing the ordinary case categorical approach here. Is that correct? That is our argument, Judge Mazzia. Okay. Well, it seemed to me that not just the majority, the four members of the court that joined on to the first opinion in DiMaio adopted the categorical approach, but the Chief Justice also did. Indeed, he says, Leocold thus provides a model for how courts should assess whether a particular crime by its nature involves a risk of the use of force. And then he applies the categorical approach there. He comes to a different conclusion, to be sure. He doesn't join the opinion that was written by Judge Kagan. But he doesn't eschew the categorical approach. So we have five votes for applying the categorical approach to the very language that we have here. Well, Judge Mazzia, my answer would be, first of all, the Chief Justice's opinion was signed by some of the very same justices who were saying that you should get rid of the categorical approach entirely. So if that's a reading of the Chief Justice's opinion, I don't think it should be. Well, how do you read that? What I read in – You read him as eschewing the categorical approach? What I read from the Chief Justice's opinion, Judge Mazz, is that he expressly said that 924C3B may be distinguishable, and he wasn't answering that question. He said that in that opinion. He doesn't say that. And Justice Kagan says that he doesn't eschew the categorical approach. There's no pushback. I thought the first time I read this that he did. But he doesn't eschew the categorical approach. Do you apply? I think he applies in the context of what the court was currently doing. And let me step back and just say, we don't think – Let me go right to what Damiah said. Damiah basically said in the INA, the – refers to a prior conviction, which requires a categorical approach. And this is exactly what the court says. We do not doubt the constitutionality of applying 16B's substantial risk to real-world conduct. The difficulty comes in 16B's residual clause, justice and act as from applying such a standard to a judge-imagined abstraction, an idealized ordinary case of the crime. Then the standard ceases to work in a way consistent with due process. So what the court is saying, it's not the language, the 16B language. It's taking the very same 16B language, and it says to real-world conduct, it's all right. The problem comes from applying it to a predicate case, a predicate crime as the INA required and as ACCA required. In both those cases, you're looking at prior convictions and trying to describe whether they are crimes of violence. But the court made very clear it is the context that makes it vague, not the language itself. Because it said the very same language is the word. We have no doubt the constitutionality of applying 16B's language to ordinary, real-world cases. And isn't that what we have? I agree with that completely, Judge Niemeyer. Every word of it. And let me just add to that. The government is not – I know when to take a help, right? But let me just add to that. The government is not even suggesting a case-specific approach for when you look at past convictions like Indemia. We weren't arguing it there. We still wouldn't argue it there. And you didn't argue that before the panel in this case. You withdrew that argument, the case-specific approach argument, before the panel. And the government, in fact, argued for a categorical approach across the country for 924C3B until now. I want to know when and why the government came to this epiphany. I think it goes to the very heart of the case about constitutional avoidance and the result of Demeyer. Demeyer created the circumstances. So Demeyer changed everything? Demeyer created the circumstances. You have to argue that Demeyer changed everything because you took a 180-degree different position in this case. Correct? We withdrew the government. We withdrew the case-specific approach. Correct. Right. And you waived, you abandoned, you conceded in this case that it doesn't apply, the fact-specific approach. You conceded it. The government did. And we got hundreds of defendants that you come up here and argued. They have abandoned positions. And we have agreed with you that they have abandoned positions and couldn't assert it. But you changed your position in this case. In this case, the government went 180 degrees based on Demeyer. So Demeyer has to have changed everything for the government. That's the only thing you can argue, that the law changed with Demeyer. There's three things that I would argue in response to you, and it's important that I answer your question, Judge King, because we want to get the right answer and we want the court to get the right answer. Whether we had it before or not, we want the right answer. That's the first point. But the second point is, yes, Demeyer was a significant, compelling decision because it holds. When you apply this ordinary case categorical approach to language like you see in Section 16B, it creates a constitutional vagueness. We can't get around that. I don't want to interrupt, but I just want to make sure that in the course of answering this question, is the government's position that the case-specific reading is the best reading of this statute, or is it that it's a second-best reading, not the best reading? That's why you were in the other place all along, but it's good enough. And it matters to me because if this is only a matter of constitutional avoidance, and I assume going forward when we're applying something like this clause to contemporaneous conduct, a pending prosecution, we would still use the fact-specific approach, the best reading, unless there was some constitutional problem. Do you know what I'm saying? I think I do, Judge Harrison. My answer to that is we do think, having looked back at this after DeMai and in light of this context, this is the best reading of the text. Now, that said, we don't think you have to agree with that. Do you think the text is unambiguous on that point? I would recognize that it's certainly susceptible to multiple constructions. Because you had a different construction before. I'm not going to try and suggest to you that no one could possibly think that this could ever have a categorical approach because every circuit pretty much had been applying a categorical approach to it. Because the government had been urging every circuit to apply the categorical approach. Actually, Judge Jackson, that's not how it really progressed as I understand it. Did the government argue for the categorical approach in the Eighth Circuit? Your Honor, I know you're thinking of the Prickett case. So, yes. And, yes, the government did. But, Your Honor, the government, I'll take an example, that this Court's precedent shows that this is not wavering. In Beckles, and the cases preceding Beckles, the government across the country explicitly conceded the vagueness of the guidelines residual clause. I certainly did it in cases. I did it in a case called the United States v. Thompson. That was the Department's position. After Beckles came down and rejected the Department's concession, said that is wrong, it's a question of law, and we will decide that ourselves. When they said that was wrong, the Court graciously gave a supplemental briefing to argue the residual clause. Both parties had a full and fair opportunity to argue it. The case that turned on and was decided on the residual clause that in the original briefing the government Mr. Rubin, the suggestion has been made here several times that we are precluded simply as a matter of the language because of the resemblance of the language of this residual clause with 16B, and that that's all there is. But isn't it also quite plausible to see this case as a matter of first impression? And the first impression is, or the question has posed would be, under the case-specific approach, do the vagueness problems that so concern the Supreme Court in 16B and in DiMaia, do those problems still exist? That's the question. And that's a question of first impression, and it's not cut off by the similarity in the language. And then the second stage of that inquiry is, is the statute, and I think Judge Richardson suggested this in his own question, is the statute reasonably susceptible to a case-specific reading? And when you look at Taylor and the emphasis that it puts upon the word involved, and you look at our own precedent and how we've talked about the word nature, and then look at the words in the course of committing the offense, you can come to the conclusion that yes, the statute is susceptible to a case-specific reason, to a case-specific approach, and that that case-specific approach avoids the vagueness problems that were troubling the Supreme Court in DiMaia. And that is a question of first impression, and not only that, but it preserves, if you look at it this way, you take a purposive look at this statute. What did Congress intend to do here? And that was, with 924C, to cover exactly the kind of crime that took place here, where somebody invaded a small business with two other associates and made off with $1,000 and smashed the cashier with a gun and never objected to that very particularized description, which was captured in the video surveillance at the McDonald's, never subjected to it at all. And then the question is, do we not owe something to what Congress intended to do here, which was to cover exactly this kind of offense, which was a crime or violence, during and in relation to which guns and firearms were used? That's this. That's this case before us. Absolutely, Your Honor. And so to address those two points, and this goes a little bit back to Judge Mata's question, but I don't think I've fully answered yet, about Leocal, about Johnson. No court, well, now the Second Circuit, a couple of courts after DeMai, but this court has never addressed this question, the real question that is in front of us, which is, if you have this issue of unconstitutionality with the categorical approach, can this language be read to remove that unconstitutional problem by using a case-specific approach? The answer to that is yes, but it goes more than that, because this court, it's not just an option. This court has an obligation to apply the case-specific approach if it is a fairly possible reading of the statute. That is the term. The Supreme Court has used fairly possible. This is constitutional avoidance, aren't you? This is the avoidance, yes, Your Honor. So what I searched for and could not find up until this time, this language, not the statute, but this language has been consistently interpreted one way, and that way is not the way that you're urging, but it has been consistently interpreted one way. Have you found any case in which constitutional avoidance has been applied to change the settled meaning of language, statutory language? I couldn't find one. The closest example that I can think of, Judge Motz, and I don't know if you'll agree that this exactly fits the hypothesis that you're asking, but this court has absolutely added elements that are not in the text of statutes in order to avoid constitutional problems. Let's go to the Supreme Court first. Sure. The Supreme Court limited honest service fraud and skilling to bribes and kickbacks. The text of that statute doesn't really say anything about that. But was there settled language before, settled Supreme Court law before that had interpreted that language the other way? See, that's my problem. I don't have a good sense of that with skilling, Your Honor, but I have to dispute the point that this is settled language because it has only been examined, and this goes back to Lee et al. And I think Judge Richardson, you pointed this out. This was not on the table in Lee et al. No one argued that. But we've had since that time, and indeed in the briefing in DiMaia, the Solicitor General knows less than 14 times said that the language there was materially identical to the language in 924C's briefing, the language we have here. And we don't dispute that, but the context is different, and it is susceptible to misinterpretation. In Lee et al. Well, I know you're saying that, but I'm wanting you to find me, or maybe you don't have one. Is there a case in which the Supreme Court said, well, the context is different here, and even though this language has been interpreted consistently this other way, the context here is different, and we're going to eschew the statutory language in our interpretation of it. Well, if we step out of constitutional avoidance, absolutely, and we can do it in the categorical case. But you're only talking about constitutional avoidance. It's just as relevant, Judge Watson. I would like to give you this example. The Supreme Court in Johnson in 2010, the first Johnson decision, said physical force in the Armed Career Criminal Act means violent force. It's force capable of causing physical pain or injury. Now, that exact same phrase occurs in the misdemeanor crime of domestic violence provision. It's worded almost the same in its foresight. And then in Castleman, the Supreme Court said physical force in that provision, same words, does not mean violent force. It can include a de minimis touching. And part of their very basis for doing so, a major part, was that if you interpreted it to require violent force, it would have excluded almost all domestic violence. And did they use the ordinary case categorical approach in Castleman? They did, but that doesn't change the point that I'm making, which is that the statutory language has two different constructions. But there were other words in that statute. I don't have it. Maybe you have the Castleman language, right? I have some of it. It was applied to misdemeanors. It had to have language that did apply to misdemeanors. What they looked at in a large part of the opinion is focusing on we know, and this goes to Judge Wilkinson's second point from earlier, we know the purpose of this statute is to capture domestic violence offenders and make sure they can't have firearms. If we interpret it the way we did in Johnson, almost all those crimes won't count anymore, and that would frustrate Congress's purpose. Now, it wasn't constitutional avoidance because it wasn't a vagueness issue, but it is the same concept here because there is no question. You have two alternatives in front, one of which strikes a provision, and the court said in Almendara's Taurus that it serves the basic democratic function, constitutional avoidance, of maintaining a set of statutes that reflect rather than distort the policy choices that elected representatives have made. I don't think I understand. The constitutional avoidance argument was made to the court in DiMaia and Johnson. Is that correct? Not by the government, no. Constitutional avoidance? No, no, ma'am. It was not. The government argued for a categorical approach. Yeah, but the government did argue that it would affect the same language used in numerous other statutes, including 924C. I don't believe that. And Justice Scalia said in Johnson that that constitutionality argument made by the government was out of place, that it would not affect the constitutionality of those cases, and then he went on to point out that it's the application of those words to an abstract conception of the ordinary case and not real world case-specific facts. Mr. Reardon, I want to return to a point you made earlier, which I think it's important to focus on. The members of this court have had some good faith and quite insightful discussions about the categorical approach. There's obviously been some disagreement about it, but that's not what's at issue here. You made the point, and I think it's worth emphasizing, that what you're suggesting here is something far more limited. This is not an assault in any frontal way upon the general application of the categorical approach. It's the government's position that the categorical approach continues to govern when one is looking at predicate state convictions and prior crimes, and that the virtues of the categorical approach still adhere in those situations. All you're taking on is a very limited approach, not a frontal assault on the categorical approach, but simply a question of, with respect to this one statute, can it reasonably be interpreted in a way that will avoid constitutional problems and preserve Congress's purpose? But this is in no sense an affront to the Supreme Court or to the general adherence on that court to the categorical approach. It's a very discreet, limited argument, which doesn't draw into question the categorical approach writ large at all. You're not doing that. We're not, and our argument is only to Section 924C3B, and that goes to something I haven't gotten to talk about yet that I need to talk about, which is the purposes of the categorical approach. But the Supreme Court has been very clear, consistent from Taylor to DeKalb, Shepard, all these cases, and Judge Duncan, this goes to a question you asked Mr. Blue about why we're applying this in the first place, and it doesn't seem like it fits. My concern, and I'm still wrestling with this, it seems fairly clear to me that the Supreme Court quite reasonably, one could argue, adopted the categorical approach as the solution to a problem. The problem, this is a problem, doesn't exist here. So it seems to be almost a solution looking for a problem to attach itself to. But what I would really, I'm sorry to take you out of your discussion for just a moment, but in route to what you were going to say and in response and follow up to Judge Wilkinson's question, what do you see as the parameters of the, you say this is a limited, you're advocating for a very limited doctrinal approach. What are those limits? Can you delineate them? Can you put some parameters on them for me? Absolutely, and to the first point there, Judge Duncan, the only thing that's worse than a solution in search of a problem is a solution that causes the problem. The categorical approach is a solution to Sixth Amendment issues with looking at prior conviction, and it is a solution to that. But it's not here. Now, the parameters, we don't have a Sixth Amendment issue. You said it's a solution to that. I just want to make sure I understand. Going forward, it would be a solution, but going back, all those people who have been convicted or pled guilty under the categorical approach, now we have a constitutional problem with all of those convictions. I think that can be resolved the same way that we resolve any time. I know you think so. I know you think it will be resolved, but they are constitutionally erroneous, right? So this is a weird case of constitutional avoidance because one way or the other, we've got constitutional problems. I don't think it is a constitutional issue if you change the textual interpretation of the statute. And looking back, I think what you would have, you would certainly have issues to look at. You would have people who were convicted of 924C offenses under an approach that you say was incorrect. They were entitled to have a jury find those facts, and no jury found those facts. So how is that not a constitutional problem? It may be harmless. It may be they're blocked because of habeas rules. We may not have to remedy those constitutional problems, but don't you have to concede that those convictions are improper? Phrased that way, I think it does have that constitutional dimension, and I'm not trying to push back against that. But I think that what I'm trying to say is that there's a very ordinary approach that has been used in these kinds of cases when the elements have shifted interpretation. And you would ask with unposed conviction, first we'd have to decide whether it would be retroactive. I know, but I guess I'm picking up on Judge Motz's thought or question about constitutional avoidance. Usually we rely on constitutional avoidance. There's not a settled meaning. It's sort of status quo. If constitutional avoidance allows us to maintain the status quo here, your constitutional avoidance reading would do two things. It would be a sea change in how these cases are prosecuted going forward. We'd have to figure out the jury instructions. I assume you're conceding we'd have to instruct the jury they can't rely solely on the presence of the gun. We'd have to work through all of that. And on the back end, we would be unsettling and rendering unconstitutional a huge number of prior convictions. I'm just saying it's an unusual application of constitutional avoidance. I actually think it's not, Your Honor. And here's why. Most of the times when the court applies constitutional avoidance to the elements of a statute, that will upend prior convictions that rely on the elements as they were interpreted before. So take this court's decision in Hamilton. The court added the element, intent to deceive, to the Stolen Valor Act. Any prior conviction under the Stolen Valor Act would not have had that element instructed to the jury. So you would have the same exact problem you're raising, Judge Motz. Well, except that you have a whole bunch of these convictions. But that goes the other way. Well, I don't know if it goes the other way. To be clear, striking the statute causes far more problems on constitutionality. And it would not be as simple as reduce everyone sentenced by the amount of the 924C, because this court said in Ventura, this court has very firmly adopted the sentencing package doctrine. This court recognizes that when one conviction out of many is found infirm on appeal, the court has the right to look at the whole package because courts sentence people based on all of the conduct. And in Ventura, a 924C count was vacated as infirm on appeal. The district court on remand gave the same sentence using the account. And this court affirmed and said he had absolute right to do that. We would have to look back on every single 924C conviction implicated. And the sentencing judge would have to decide under the sentencing package doctrine what the new sentence should be. And these are inherently multi-count cases. Almost all 924C cases include at least the crime of violence. They don't have to. But most of them, in fact, do. And many of them include multiple counts. We've often dismissed counts in reliance on 30 years of case law that says that this is a valid statute. And we've dismissed other counts that would be perfectly valid. We would have to go back and look at whether we need to recharge from 20 years ago. How is the jury instructed under your theory going forward? I think the jury would be instructed in a pretty straightforward way. It would be instructed that it first must find – let me back up. There's three scenarios that you might encounter when you're looking at this. The first scenario is if it's a forced clause offense and there's no question. Say bank robbery, this court's decision in McNeil. It would be instructed as it always has. The second would be if we know it doesn't count under the forced clause. Sex trafficking by force, fraud, or coercion, this court's decision in Fuertes. The judge would instruct the jury that in addition to finding the possession and use and furtherance element and that the crime of violence was committed, it must also find that the defendant's conduct by its nature involved a substantial risk that physical force against the person or property of another may be used in the course of the offense. Do you have to say anything about the gun? I think, Judge Harris, you've mentioned this and hinted at it. I think the answer is that the jury would be instructed that they should consider all of the conduct. They're not allowed to decide that simply because the gun was present it meets the residual clause, but that they certainly can consider it. I think the defense has suggested we would be saying they have to somehow ignore the gun. That is not what is normally done. This is actually an incredibly ordinary jury. Those are the same impractical concerns that Johnson talked about. Because it would collapse the offense itself. When you use a gun to commit an offense, isn't that necessarily involves a substantial risk? It would collapse into it unless you're going to say you can't consider the gun at all and weigh it solely. That's not a model of clarity. I think it is when it's a jury that's involved. For example, this is ordinary in state cases. When a jury's involved, it's easy to determine what the nature of the offense is. Because it's not the conduct. It's never been. It's the analysis on what is the nature of the offense itself, not the conduct or the action. Who gave us the categorical approach? I would say the Supreme Court in 1990. You're right. The Supreme Court did. Four years after the statute was enacted. The Supreme Court did. And it had many occasions to deconstruct it, to reverse engineer it. It never did. So wouldn't this be really the essence of judicial activism you're encouraging us to do? Let's find a way to make this work. The Supreme Court had plenty of time to do this. These fine arguments made by my good colleagues, Supreme Court, they're pretty smart people up there, too. But they never deconstructed the categorical approach. We're trying to find a way to say fact-specific will solve that. And it doesn't. It's very impractical. It wouldn't make any sense to a jury to say, oh, charge is a crime. We use a firearm. Now we go, nope. Never mind that gun. It was already there. Now let's see whether without the gun. As Johnson said, the language is impractical concerns don't go away because you come to a fact-specific device. Judge Gregory, the Supreme Court in Johnson said exactly the opposite of that. The opposite? And Judge Niemeyer has read that quote a couple times in this argument, has said that we do not doubt the constitutionality of this approach when applied to real-world conduct. The Supreme Court also quoted that entire paragraph. I said it's impracticality concerns. And I think it's incredibly practical. Juries decide these questions every single day. They decide them in federal cases and ask about the risk of certain conduct. We cited several in our brief. I can talk more about them. But the point is you have to decide they will. Even on your proposed jury instruction, that's something we could sort out in the future, I suppose, what exactly that instruction will look like. But on your proposed jury instruction, it's one thing to say juries can always ask, is there a substantial risk? But they're going to have to say, was there a substantial risk that I guess by its nature this conduct involved a substantial risk of physical force? And in answering that question, you may not rely solely on the fact that a gun was used. I mean, even I sitting here, I'm having a little bit of trouble figuring out how that inquiry goes forward. Well, maybe we can start with by its nature. And that's certainly something that the defense has focused quite a bit on. But they focus on it as being a problem for this interpretation, that by its nature. But what by its nature is saying is that you look at the nature of the conduct at large. And that's particularly important for ENCODA. Particularly important. You just speak the word, and you look at the conduct. It doesn't say conduct. It says the offense. And the Supreme Court in 9-1-1 said that that term is susceptible to a conduct-specific inquiry. And they, in fact, applied one to that term in that case. In the Case case, they applied both a categorical approach and a conduct-specific approach to that term, all within the same sentence. It's hard to believe that after Apprendi, the Supreme Court would be objecting to returning a greater role for juries in both conviction and sentencing process. One thing about going backwards here, the change here is not to the elements of the crime. The elements of the crime remains what the elements of the crime have always been, which is, is there a crime of violence and was a firearm used during and in connection with it? And as I understand ex post facto law, when there's a procedural change that doesn't create an ex post facto problem, and this seems to me analogous to a procedural claim which does not change the elements of this offense at all, but it's simply a question of how procedurally the elements are to be proven. I don't think to try to puzzle out the excellent question posed by Judge Harris, that there are problems going backward here because someone pled guilty to a crime, the elements of which are what they have ever and always been. I think that's a very good point, Your Honor, and I think that kind of goes, Judge Harris. It's not the way you argued it in your brief, though. I started to suggest earlier that first this Court would have to decide if the case-specific approach is actually retroactive on collateral review. This Court has traditionally done that as a two-step process. That was the Supreme Court. You had Johnson, but it wasn't retroactive until Welch. You had Simmons. It wasn't retroactive until Miller. Now, I think it's very clear that if you strike the statute, then that would be retroactive, but this may be more of a procedural rule. I think, Judge Wilkinson, that was what you were describing. It's a procedural rule more than a substantive rule, and even momentous, huge procedural decisions have not always been retroactive. Booker was not retroactive. If it is retroactive, you're creating hundreds and thousands of 2255. There will be those no matter what the Court decides in the case. And they'll be there if we agree with you. Or if you strike the statute, they will also be there. Have you all done an impact analysis of what, if we agree with you, what the impact will be in the Fourth Circuit? I can tell you that my office currently has pending approximately 200 2255s to date for this case. But what I would tell you, Judge King, is those 2255s must be dealt with. Whatever you do, that's in the Eastern District of North Carolina. That's in the Eastern District of North Carolina. Have you looked at the Fourth Circuit? I haven't. I don't have those numbers, Judge King. Have you looked at any other circuits? I haven't, Judge King, but what I'm trying to suggest is you would have to. There are 94 of these districts in the country. It would be worse if you struck the statute. Because in every single one of those cases, first I mentioned earlier the sentencing package doctrine, we would have to look back at what remains. It would not be as simple as reduce the sentence by 60 months and let him out. Because in many of those cases, the judge relied on that, might have given a higher sentence on, say, the Hobbs Act robbery conspiracy, but said he's getting 60 months on the 924C. You'd also create avenues of coram nobis, would you not? I don't think so. I'm not sure I follow how that would work. As for a petition of coram nobis, if you already served your sentence, it was wrong. It's got a defect in it. I think that would also happen if you struck the statute. Our point is the problem, if you strike the bottom line point here, though, you're going to have an administrative exercise of some substance, whichever way the court goes. But our task as judges is to determine what the law requires. It's not an administrative decision. I think that's exactly right. I totally agree with that. Should we be concerned about how much work this creates if our task is to follow the law? I think that's exactly right. Whether it goes in that vein. But let me get back to one of Judge King's earlier questions. First question he brought up, he asked you to talk about the DiMaio case in light of the precedent of this case. And we start out by saying you had conceded a categorical approach. I understand it because it looks to me that was the law in this circuit. So DiMaio had to do something different. There's also another aspect of our prior law, and that goes back into we have talked about this prior conviction, present offense dichotomy in light of the crime of violence. We did so in Martin. We did so in Johnson in 1991. We did so in the context of the sentencing law, but we made it clear that because of the plain language, not because of the belief that some circuits felt like there'd be fewer fact-finding difficulties when addressing those instant offenses. That was not the basis. And we made that clear. We said it was the plain language thing. So when we focus in that line, what is it that Maio did? Did it overrule every one of those cases in this circuit, and did it overrule even our rationale that underlines this dichotomy difference between present offense and prior offense? DiMaio did two things, and I want to be very specific about them. DiMaio did two things. The first is it made crystal clear that if you continue with that interpretation, it is unconstitutionally vague. Therefore, it brings constitutional avoidance to the fore. But the second thing it did is it raised the purposes of the categorical approach to be foremost. And in none of those cases that you cited, Judge Winn, and also in none of the cases that the Supreme Court has considered, have they looked at whether the purposes of the categorical approach are a match for contemporaneous criminal conduct. The Supreme Court has never considered this statute in that context at all. Not one word. Not one application of the categorical approach to 921 C.Q.B. What about Justice Scalia's comments in Johnson? I mean, it's totally dicta, but he assessed the whole list of statutes that the government advanced and commented that there was no constitutional problem with that. I mean, it wasn't a holding. That was not for the court, but he was addressing an argument, and that was part of the Johnson opinion. I believe he said it doesn't even cast doubt on those. And that makes sense because there are, and I tried to get to these earlier. I know my red light is on this. The court will permit me to address these purposes. The Supreme Court has been very clear about what the purposes of the categorical approach. It's essentially a saving construction itself because in Taylor, they recognized it would be unconstitutional. This was the generic definition of burglary. It would be unconstitutional to look at the prior offense conduct without a jury to determine whether it met the generic definition of burglary. So they had a good solution. We won't look at the offense conduct. We'll look at the element. So that was one. That was the Sixth Amendment jury right. The second purpose of the Constitution was the textual focus on conviction, not conduct. You do not have a focus on convictions here. You don't even have to have a conviction on the crime of violence. I'm sorry. I know you want to talk about purposes, but when you talk about the text, I did have one picky textual question I was hoping you could address. So in C1A, the phrase crime of violence is used twice. The second time, it's a crime of violence, the parenthetical, that this includes a crime of violence that provides for an enhanced punishment if it's committed by the use of a deadly or dangerous weapon or device. Can you explain to me how we would apply the conduct-specific approach to crime of violence in that parenthetical? Because it sure seems like it's talking about a generic offense because it's really an offense that provides for an enhanced punishment. So I'm looking at the parenthetical, and I have it in front of me. So how are we going to apply your conduct-specific approach to crime of violence in that parenthetical? I actually think that it's doing something very different. What it's saying is there would be an argument without that parenthetical that you can't apply Section 924C if the substantive crime of violence already has an enhancement state. I understand what the parenthetical is doing. I'm just saying the most natural reading of that use of crime of violence, to me at least, seems clearly referring to a generic offense that provides for an enhanced punishment. Like you look it up. Does 927B have an enhancement? Oh, yeah, it does. How are you going to apply a conduct-specific approach to that parenthetical? How can you make that – how can you give the conduct-specific definition to that use of crime of violence? I would acknowledge that there we are looking at the statute that did not – Okay, so you're saying that crime of violence has two different meanings in the same sentence. No, I don't think so because I'm not even sure how – if you set out to write that. If you set out like what they want to say is you don't exclude that from the possibility of being a crime of violence merely because that crime also has a penalty for using a firearm. I think if – but you still want a conduct-based approach. I don't see how you'd write it any differently than this because when you're talking about – One thing you would not do is use the same phrase to have two different meanings in the same sentence. And the Supreme Court has seen that before in cases like Hayes where the word offense was referring to both the force clause in the misdemeanor domestic violence and also submitted by a person who is a spouse. The exact same word was modifying both of those. And in one, it was a categorical approach. And for the latter, it was a case-specific. So you can't – first of all, you can't do it. But second, all they are saying there – and there's no way to do what they're trying to do. I know what they're saying. They're saying look at the statute, look at it as a generic offense, and see whether, as a generic offense, it includes this other enhancement. I totally understand what they're doing. I'm simply saying – I mean, this may be your answer, and that is – I understand it. So we will just use different approaches to define crime of violence in different parts of that provision, and I understand that. In this court in Price, a decision I wish I had talked about more today. In the response you just gave to Judge Harris about force being – having two different meanings in a domestic violence statute, was that within the same sentence or the same statute? Well, the physical force was two different statutes, but it was the same term. Right. It was. It's not in the same sentence. So it's different than what she was asking you. The example I gave just then was different. It wasn't about force. It was the fact that the misdemeanor crime of domestic violence provision talks about the use or attempted use or threatened use of a deadly weapon. Right. And I thought that was in response to her question about the fact that you're arguing that the same word twice in one sentence could have two different meanings. And you said yes, and the Supreme Court had seen this before, and then you started talking about the domestic violence statute, and it's not the same sentence. Right. In Hayes, it was. In Castleman, it wasn't. I used the same statute with two different case examples. In Hayes – Not the same sentence. It was the same sentence in Hayes. In Hayes. It was addressing – it was an offense that has as an element the use or attempted use of physical force for the threatened use of a deadly weapon committed by. And so that first – Qualified family members. Qualified family members. Right. And the Supreme Court said if we do apply a categorical approach to the first part of that sentence, used or attempted use of deadly – or used or attempted use of physical force, we apply a case-specific approach to the latter. You can prove as a fact whether it was a covered relationship. I'm sorry. I just heard. No, no. All I'm suggesting here, and this court in Price actually said when you have a reference to elements in one part of one of these statutes, and that triggers a categorical approach, and then you don't use it in another part. That's actually – not only does that not cause a problem, that's an indicator that Congress wanted the other provision to be broader. It is a catch-all. It is designed to catch things that don't fall in under the categorical approach. And if I could just offer how unfortunate the application of the statute has gotten to be under the categorical approach. No commission of sex trafficking by force, fraud, or coercion counts. And this court held in Fuertes that neither – it doesn't meet the force clause, and the ordinary case doesn't. But I will tell you that we prosecute every day. And, in fact, Fuertes itself was the case where the defendant in that case had threatened the prosecutor who was forcing to work for him with a gun and discharged it in her presence. I cannot help but think that that is exactly the kind of statute that this – or exactly the kind of case that this crime was always intended to target. And what's great about the case-specific approach is when you have an outlier. But it was only after DiMaio that the government took the position you're taking now. Yes, Your Honor, but the parties have had a full and complete opportunity to brief, and we've had an on-bonus – I just wonder, because you said it, you can't – this is what this statute was always intended to do. But the – so what – I go back to what Judge Winn asked. What changed for the government in DiMaio to reverse course in this case? We did not – What language or what happened? We did not think. And for all the reasons, if you look in the original briefing when we talked about how we didn't think it was vague under the categorical approach, that four justices agreed with in DiMaio, which four is not five. DiMaio changed everything. DiMaio changed everything for you all. It did. In this case. It did. You went from one position, 180 degrees, to a different position. I don't – So you just realized all this earlier this year. I think it was April of 2018. It was April, Your Honor. But it is our – it's a job that actually is shared by the government and by the court, that if there is a way to save this statute, that we should embrace that way. I'm not saying that any old thing, and I'm not saying the court should rewrite the statute. Can I ask you just for – just a point of clarification, because I'm genuinely curious about the way this unfolded. I mean, even before the Supreme Court decided DiMaio, it was clear, at least, that there was a constitutional issue as to the vagueness of this language, which is why originally you put it in your brief as an alternative argument. Look, we think we can distinguish Johnson and the ACCA from this language, but if you disagree, constitutional avoidance, don't apply the categorical approach. So why did you withdraw that – do you know what I'm saying? Like, it was obvious before DiMaio that you had a constitutional doubt, that there was obviously a constitutional doubt, a real constitutional question. So I guess I'm not understanding what changes about your constitutional avoidance position when DiMaio comes down. Like, there was already a constitutional avoidance issue, and you – at that point you said we can't get around the language. Your Honor, and I withdrew it, Your Honor, to be in line with the national position of the Department of Justice. And that was – Actually, but – To be in line with the circuit law. So give us the rationale for that national position. The rationale was it was the circuit law. And frankly – and I said this in our brief – it was more by way of assumption across the country, including in the Department, more by way of assumption that you would apply a categorical approach to the statute than it was ever by way of reason. I don't find any cases where it was grappled with. In 924C, contemporaneous conduct, does this approach make sense? What happened is, in 2009, the Supreme Court applied it to ACCA and James. And then after that, it applied to everything that kind of looks like it. And now, only when we're confronted – now, if we had circuit law in this circuit that precluded the argument that you could apply a case-specific approach, fortunately this Court has chosen to take the case en bas. I thought you said it made the exact same argument then that you were making today. Oh, no. That law is a different question. That's whether that's the best reading. But now, after Johnson, there's constitutional doubt. So we are asking you for the first time to address this new question. Is this a plausible reading, even if not the best reading? That argument was available to you starting with Johnson, which obviously did into constitutional questions, the vagueness of this very similar provision, as the Supreme Court ultimately held was true. So I guess I'm still not really understanding. At that point, the position of the United States was, sure, there's constitutional avoidance, but we can't get past this text. I don't see what changes about that after DeMaio. I would say that we want to reach the right answer and that DeMaio caused a lot of searching in the department to find the right answer. And every single word of what we have submitted to this court is not only what we think the right answer is. We think it's compelled by constitutional. I don't think you should back away from the transformative effect of DeMaio. DeMaio created the question that is before us today. Before DeMaio, that question probably didn't occur to anybody. But DeMaio was the one that actually generated the question. And DeMaio is why we're here. I think that's exactly right, Judge Wilkinson. And DeMaio is certainly what caused the department to reconsider this issue. Let's be clear. We're here. You started this case out. You agreed with the defendant. And we had just done with the government, who has control of this case, brought the charges, went through the whole process, brought it here, says, okay, we agree. We simply send it on back. But the court got involved in it. The question that bothers me is, why don't we do that when the defendant comes forward and he has taken a position that's totally opposite and wants to change it around, waiting for a case or something down the road? We are quick, and there's a long line of cases. When the defendant takes the position you take, we dismiss it. We say, wait. And in this instance, you come in, I think, quite reasonably, because I'm not criticizing you for saying the categorical approach applied. There's a long line of cases to say that's what's happening here. You come in and you find the tenant of the court is different, and you change your mind. And the court allows you to do so. And the court sort of takes this battle from then on, and the government is really following the lead of the court. Isn't that what you're doing today? You're just following what the court has told you, has given you some impetus to go for, and says, hey, why are you doing this, and why don't you go this way? No, sir. We're pursuing this because we think it's the right answer. Oh, I understand. The right answer is informed about what you think the court is going to do, but that changed once you got informed with different information. This case was yours. You could have dismissed these charges down there. The government can do all those things. You come to the court of appeals and you tell them, okay, categorical approach applied. We agree with the defendant. You would think that would be the end of the case. But no, if you have, in the words of Judge Gregory, activists who want to take over and do it their way, appeal, oh, this can't be right. Government, you need to do it differently. You jump in line with them. Isn't that what happened? No, sir. It's not a bad answer. I mean, if it gets you to where you want to go, it's still there, but we need to recognize this in these cases so that when a defendant comes with your argument before this case court, I'd like to hear the same people say the same thing, and that is, hey, we need to get to the right answer. I like that. I like your approach. Let's get to the right answer, but let's do it in every case. Let's not just do it for the government. Let's get to the right answer. If I could, Judge Wayne, this court has been consistent in that, in the principle and as we explained in our brief. Consistent in what? In treating the government and the defendant the same? You don't maintain that, do you? I do, and I will give you the example. If I can give you an example. And I would like to say that I try to reach the correct result in every case, regardless of whether it's the government or the defendant, and I respect the ability of my colleagues to do the same. And I hope I'm not saying I can't do the same. I absolutely believe she does, but I'm telling you, the cases that come from this court are treated differently. And when the government comes in with a position where, in a civil case, if the parties come into this court and says, well, we all agree it's going to go this way, do you think we go out of our way to try to make sure that, no, the right answer is found? No, we send it back. When the government has gone through all of this to prosecute this case, do everything it can, come to this court and says, okay, this is what it is, we send it back. It's what we should do, but we don't. I say, if you're going to do it for the government, let's do it for the defendant, too. I'm not looking for an answer in this case. What I'm saying to you is, the next case, because I've seen it over and over again, that we go out of our way to put a waiver on the defendant, to try to restrict them to their rights, to make sure they're in it. If they don't argue in a brief or didn't argue below, or when they bring it up here, it's gone and there's no chance. They go to jail, and that's the end of it, and that's not the way our system of justice has traditionally worked. May I answer this question with a detailed response with a citation to it as well? The essence of waiver is prejudice, and so we're not backing away from the idea that arguments can be waived. Of course they can. I've filed plenty of briefs claiming waiver on people, for sure. But when you don't have prejudice, you don't have waiver, and in cases where defendants have been able to raise arguments later, but the government's been given a fair opportunity to respond, this Court absolutely has considered those arguments. Copeland, for example, this is a quote from that case. Although generally we will not consider issues raised for the first time in a reply brief, we consider Copeland's argument in light of oral argument and supplemental briefing by the government. When the parties have had a full and fair opportunity to brief the matter, they have. Mr. Rubin, some moments ago, you may think it was some hours ago, you were talking about one of the paradigmatic examples of sex trafficking offense and how you thought that it couldn't possibly be contemplated that Congress intended to exclude that from the reach of the statute. And then you were about to say, in dealing with the outlier cases, there's a way to deal with them. I'd like you to finish your answer with respect to that. How do you deal with these outlier cases that Judge Harris talked about earlier, that no reasonable jury should have to reach a guilty verdict with respect to a crime of violence? Well, first of all, I do think, to your point, and this was I think in the previous argument, Judge, I do think you could have a motion for judgment of acquittal if the government has just absolutely not presented evidence that a reasonable jury could conclude. So that's the first step. That's not the only step. They always make a motion for judgment of acquittal, and they're always denied. I've seen them granted in plenty of cases. We never see them. Well, you don't. You never see them because we can't appeal them. So in that sense, yeah. That's the first step. And, yeah, you wouldn't actually see those come up on appeal. But the second step is the jury. And we place so much faith in juries, but not only to follow instructions, but also to use their common sense and to apply statutes exactly like this in state courts and federal courts every day. So if you brought the outlier case where the connection between the gun was not related to the crime, that's how it is now, or where the crime really did not bring about a substantial risk of force, what I would expect is at a minimum you wouldn't get a unanimous jury, and you'd probably get a straight up acquittal. So that is the protection, and it is the best protection our system offers. But the second point, Judge Gadsden, where I was trying to go with the sex trafficking example is if you have a case of sex trafficking where the gun wasn't used in a way that created a risk of force, then you would be able to have that offense not count. Under the categorical approach, it's take it or leave it. If the ordinary case counts, all commissions count, even if the defendant's particular one isn't the ordinary case and it wasn't violent, it still counts. That's a fourth thing. I mean, doesn't that response go too far? It's always true of the categorical approach that you have to, by its nature, overlook facts which are clearer than daylight because you're focusing at a higher level. That's the payment. You know, that's the tradeoff that the categorical approach gives to avoid the inherent problems of vagueness. And it frustrates me to look at a set of facts which clearly connote violence, but the categorical approach doesn't let us reach the facts. I'm not sure that's a very tailored response to Judge Gadsden. I think it's tailored to, I hope to tailor it to 924C3B because everything, Judge Duncan, you mentioned about why we use the categorical approach, none of it applies to the statute. The text doesn't focus on convictions the way ACCA did. That was what the Supreme Court said in Taylor was the purpose of the categorical approach. You don't avoid any Sixth Amendment issues because we have a jury. The jury already has to decide what happened in the crime of violence. The Supreme Court has always told us that we start with the statute, right? Yes, Your Honor. So if we start with the language of the statute, and you don't assert before us, do you, that the language is not materially identical to that that was considered indeminant? We don't dispute that. The words are materially the same. We stand by that. So if that's the thing, do you have any Supreme Court law in which two materially identical statutes are interpreted differently, particularly after one of them? One interpretation of that text has been held unconstitutional. Not as though they're held unconstitutional. Okay, so two materially identical statutes. But, Judge, they're not materially identical because you cannot just. We just agreed that the statutory language is materially identical. But the context is vastly different. And that is our point. Excuse me. I just wanted to be sure I understood the answer. But you don't have a case where materially identical text from the Supreme Court is interpreted differently. I do. Outside of constitutional avoidance. But if the example I gave you earlier, and that is Johnson 2010 to Hayes, and the term physical force in very similar statutes in the exact same term, have two completely different meanings. Mr. Rubin, your argument here is a textual argument. It's fundamentally a textual argument. And the question is, can the text of this statute reasonably be read in a fashion that avoids what was troubling the Supreme Court in DeMaio? And you've been very textual in your argument. You've talked about the Supreme Court and its discussion in Taylor about the use of the word involved. You've talked about the precedent of this court and its discussion of the word use of the nature being a case-specific kind of thing. You've talked about in the course of committing an offense, which suggests a case-specific approach. So what I want to push back on a little bit is the idea that the textual arguments are all on one side. No, the textual arguments are not all on one side. The textual arguments are the ones that you have been making. And the question is, can the text of this statute, given what we know in our own precedent and the Supreme Court's precedent, reasonably be read to avoid the kind of things that were troubling the Supreme Court in DeMaio? And that's exactly, it seems to me, what a circuit court ought to be doing and what your brief has tried conscientiously to do. You've made a textual argument. And I would add to that, Judge Wilkinson. Judge Keenan has been trying to ask a question. She's been trying to ask a question for a while. Excuse me. Excuse me. Judge Keenan, you may ask a question. We have to bring this to a close at some point. Everybody will not be able to say, you know, it's like a meeting where everything's been said, but everybody hasn't said it. So, Judge Keenan, would you please close us out with your question? Thank you. Thank you, Judge Gregory. And thank you, Judge Duncan. No, the question that I had is, it seems to me, Mr. Rubin, I'm wondering why you're conceding the crime of violence. It seems to me, if you're talking about the context of the statute, you've got to address the words during and in relation to. And I haven't heard any of your argument talking. It seems to me your argument is airlifting the term crime of violence without looking at its statutory relatives, which include during and in relation to. Do you think that has no value? I'm so glad we're going to end after your question and not before it, because I should have talked about that earlier. Because I think during and in relation is obviously conduct-specific language. During and in relation to a crime of violence, it's talking about the crime of violence that this defendant committed and not the element. And I think you're exactly right. We shouldn't be airlifting. And if I've given that impression, then I should have done it better. Because we can't interpret 924C3B without looking at C1A, the statute that includes the term crime of violence. Everything in there, with the exception of what Judge Harris mentioned, about the parenthetical, everything in there is talking about conduct. Everything. That's essentially the operative clause. And I would just conclude then, and I hope I've answered your question, Judge. Yes, you have. And I haven't had the same question for a close of time. And that would bring me to, I think, the right conclusion, and I would conclude with the idea that the categorical approach, and I've done so many of these cases now, it starts to feel like it's the default. It is not. It is an exception to the normal rules when we normally look at conduct in criminal statutes. And it is an exception that was applied for a reason, three of them, none of which apply here. If you go back and look at the cases where this originally was applied, if you go back and look at James even under ACCA, you won't see any of the discussion that we had today for an hour. Because it wasn't relevant, it wasn't considered. When you do consider that context, and especially when you consider constitutional avoidance, and this court's obligation not to strike a statute, if there's a colorable reading of it that fades it, I think there the conclusion is clear that you should affirm the judgment of the district court and find that the statute is not unconstitutional. Thank you. Thank you, Mr. Rubin. Mr. Blue, you have reserved some time. Thank you, Your Honor. I'm mindful of Judge Gregory's comments about everything having been said, so I'll be limited. First, I'd like to address the issue of the canon of constitutional avoidance. That's the canon of last resort, and the court is bound to look toward other canons first before resorting to that one. Chief among them would be just what the plain text of the statute means. Okay, Mr. Blue, going into the plain text, I want to ask you the same question that I asked opposing counsel, Mr. Rubin. I'm worried that what we're doing here is airlifting this phrase, crime of violence, without looking at what else the statute says. And the statute talks about during and in relation to any crime of violence. So if you could help me and tell me how that's not necessarily fact specific. How do you determine that something occurs during a crime of violence without looking at the facts of the case? Well, first, Your Honor, in response to that, we've cited cases essentially that say that, one, the crime of violence determination is completely separate from the use, carry, or possession prong of 924C1. Don't we have to look at the statute as a whole, all of the words to try to make sense? I disagree with that. Those are two separate parts of the statute. In the 16B cases, for example, none of the courts or the DeMuy and Leacow decisions don't turn on the And, again, we would cite to the Mandatory Victims Restitution Act, as well as the Travel Act. Both of those statutes look at contemporaneous conduct. And, again, 16B applies with equal force in those statutes. Also, in Maya, the court struck 16B in its entirety. It didn't limit striking 16B to past conduct. It's no longer effective for incorporation of the statutes that look at contemporaneous conduct. And so, again, based on principles of constitutional avoidance, and that being a canon of last resort, the text itself, which is what the Supreme Court has told us what the text means in both Leacow and DeMuy, the text itself dictates the outcome of this case. Well, that answer seems to be reading during and in relation to out of the statute. Again, the reason I disagree with that, Your Honor, is because, again, the aspect of the statute that criminalizes the conduct is completely separate from the underlying crime of violence determination. And the courts have stated clearly that the crime of violence determination is an issue of law that's left for the judge to decide. And so that's why those are two separate issues. Also, I addressed in my initial comments the fact that there is a real concern of, as Judge Gregory mentioned, juries collapsing those two inquiries into one. Any time a gun is involved in any offense, juries would inherently say that this is a crime of violence. Mr. Blue, are you expecting a hostile question from me? Not at all, Your Honor. I just wanted to, before we conclude here, I just wanted to thank you for your very fine argument. I wanted to thank Mr. Carpenter for his very fine argument. I wanted to thank Mr. Rubin for his very fine argument. In the face of some tough questioning, I think all three of you have held up very well and provided what, from my standpoint at least, is an argument of exceptional ability. So there's my hostile question. Well, thank you very much, Your Honor. I would like to address, I'd like to add to that, and I agree with Judge Wilkinson entirely, that in your instance, it's court-appointed. You should be especially commended for taking this on. Thank you. It's more than you bargained for, I'm sure. Not at all, Your Honor. And I do want to address the point that Judge Wilkinson raised a few times about sort of the uncomparable nature with the outcome of some of these cases, given what on its face appears to be violent conduct. Nothing in our argument or the court analysis of these cases undermines a sentencing judge's discretion under 3553A to punish appropriately for egregious conduct. In this particular case, the maximum sentence for the Hobbs Act conspiracy conviction was a 20-year sentence. Mr. Sims received a 115-month sentence on count one and an additional 84 months on count two. There's nothing in our argument that takes away the discretion from sentencing judges to appropriately bury or appropriately depart inappropriate cases. I know Judge Wilkinson, you had invited district judges to do that in appropriate cases a few years ago. And so that's still a tool that prosecutors and sentencing judges have to sanction egregious conduct. Thank you. Thank you. Mr. Blue, on behalf of the court, thank you. You're court-appointed here. We appreciate your services. The court couldn't do our work without that. It's an immeasurable amount of pride and gratitude that we express that. And also, of course, Mr. Blue, thank you for your able representation in the United States. And thank you, Mr. Copeland, for being a friend of the court. With that, we'll ask the clerk to recess the court so we can reconcile with yourself and panels, and we'll come down and re-counsel. This honorable court will take a recess. Okay.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Duncan, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris, Richardson, Quattlebaum